TYSON, Presiding Judge.
Elton Hall was charged by indictment with “escapes or attempts to escape from the penitentiary” pursuant to Title 14, § 15P, Code of Alabama 1940. The jury found the appellant guilty as charged, and the trial court set punishment at twenty years in the penitentiary.
Stephen W. Hicks, a Bessemer police officer, testified that while on patrol during the early morning hours of August 25, 1976, he stopped a 1970 blue Camero driven by Anita Weed. Officer Hicks asked Weed why she was driving about aimlessly near the Bessemer Courthouse. Hicks testified that approximately an hour and a half later, he *9 observed Weed’s blue Camero parked down from the Bessemer Courthouse and Weed looking in the window of a local realty company. Hicks went in an alleyway behind the courthouse and discovered a cord hanging out of a window on the fourth floor of the courthouse. Hicks testified that he broke the cord and removed a pistol tied on the end, hidden by two decks of cards. Hicks called a police car unit on his radio and when the officers arrived, Weed was taken into custody. Ten to fifteen minutes later, according to Hicks, he observed another cord hanging out of a fourth floor window of the Bessemer Courthouse. Hicks testified that a white cylindrical object, ten to twelve inches long, was attached to the end of the cord. Officer Wilkins, according to Hicks, fired his service revolver at the object, which was about ten feet from the ground, but missed. The object was pulled up to the window. Officer Hicks identified at trial the pistol and decks of cards taken from the cord earlier that evening.
J. H. Mahaffey, a Jefferson County Deputy Sheriff, was working in the Bessemer County Jail on the fourth floor of the courthouse the night of the incident. Mahaffey testified that the appellant was a fingerprint trusty in the jail at that time and had access to the hallway outside the day room. In the hallway, according to Mahaffey, was a telephone. Mahaffey testified that communications between persons in the day room and those in the outside hall were possible by use of visitor windows.
David Farmer testified that on August 24,1976, he was a prisoner in the Bessemer jail and knew the appellant. Farmer stated that he overheard conversations between Johnny Frank Williams and the appellant concerning getting some hacksaw blades into the jail. These conversations, according to Farmer, took place approximately a week before August 25, 1976. Farmer testified that he also heard a conversation between the appellant and other inmates concerning a planned escape. Farmer stated that on the night of August 24, 1976, he heard a shot fired as two inmates, Buddy Borden and Johnny Frank Williams, were pulling something up the outside wall on a string. At this point, according to Farmer, Johnny Frank Williams went to the day room window and tapped to get the attention of the appellant in the hallway. Farmer testified that Williams showed the appellant a piece of paper on which was written a telephone number. According to Farmer, Williams and the appellant had previously discussed the appellant calling Weed to bring some hacksaw blades to the courthouse.
Roger Smith testified that he was an inmate in the Bessemer jail in August of 1976. Smith stated that he had heard the appellant and Williams discuss an escape. According to Smith, Williams threw a pistol, which had been hidden under a fan, out the window after a shot was fired that night. Smith testified that Williams told the appellant to call Weed and ask her “why she didn’t bring the other pistol.” According to Smith, the plan was to have one of the inmates pretend to be ill and to rush the guard who would come back to check on the inmate.
Max Linn, Chief Warden of the Bessemer County Jail, testified that he was called to the jail around 2:30 A.M. on the morning of August 25, 1976. Linn stated that he conducted a general search of the cells on the fourth floor after being informed of the events which had taken place earlier that evening. Linn testified that several hacksaw blades were found under a mattress in block four along with some blades which were hidden under a floor fan. Also, according to Linn, there was evidence of saw marks on several bars.
The appellant testified that he never saw any hacksaw blades, cord or guns in the jail and denied any knowledge of an escape. The appellant stated that Williams told him to call Weed and tell her to do “what she was supposed to do.”
I
Appellant contends that there was a fatal variance between the material allegations of the indictment and the proof.
*10 The appellant was indicted under Title 14, Section 153, Code of Alabama 1940 (Recompiled 1958) which reads as follows:
“Any convict who escapes or attempts to escape from the penitentiary, or from any person or guard having him in charge under authority of law, either within or outside the walls of the penitentiary before the expiration of the term for which he is sentenced, shall, on conviction be imprisoned for an additional term of not less than one year.”
During the course of the trial, the proof established that the appellant was serving a ten year sentence for robbery in the Bessemer County Jail when the escape attempt took place. On May 26, 1976, the appellant was sentenced to ten years imprisonment in the penitentiary for the robbery conviction. Due to a federal court order issued August 29, 1975, by Judges Prank M. Johnson, Jr., and W, B. Hand, the appellant was serving his robbery sentence in the Bessemer County Jail.
Appellant contends that since the indictment charged him with escape or attempt to escape from the penitentiary, and the evidence showed that he was incarcerated in the county jail at the time, a material variance existed between the indictment and the proof, and therefore his motion to exclude the State’s evidence should have been granted.
The appellant was serving his sentence for the robbery conviction in the penitentiary within the meaning of the word as used in Title 14, Section 153, supra. Chief Warden Linn stated that the appellant was receiving time credit on his sentence for the robbery conviction while in the county jail.
In Strickland v. State, 280 Ala. 31, 189 So.2d 771, the Alabama Supreme Court held that the offense of escape under Title 14, Section 153, applies to a prisoner who has not been taken into a penitentiary within the meaning of Alabama law allowing prisoner no credit for obedience to sentence until he is in the warden’s custody. The appellant, in the instant case, was receiving credit on his sentence and was, in the statutory sense of the word, in the penitentiary. He was simply awaiting transfer. Therefore, the trial court properly overruled appellant’s motion to exclude the State’s evidence.
II
Appellant contends that the trial court erred in allowing the introduction into evidence of the trial docket sheet, or bench notes, showing appellant’s previous conviction for robbery.
The trial docket sheet is not a record, but is only a directive to the clerk as to what judgments and orders should be entered on the court’s records. Palmer v. State, 54 Ala.App. 707, 312 So.2d 399; Winn et al. v. McCraney et al., 156 Ala. 630, 46 So. 854; Calvert v. State, 26 Ala.App. 189, 155 So. 389.
In allowing the State to introduce into evidence, over appellant’s specific objection, the trial docket sheet showing appellant’s prior conviction for robbery, the trial court committed reversible error. Palmer, supra; McCarty v. State, 55 Ala. App. 342, 315 So.2d 139; Harris v. State, 54 Ala.App. 10, 304 So.2d 252; Childers v. Holmes, 207 Ala. 382, 92 So. 615.
In Palmer, supra, this Court stated:
“While in Ellis v. State, 244 Ala. 79, 11 So.2d 861, the use of a trial docket was said to be merely cumulative since the witness had admitted the prior offense, and such was deemed not to be prejudicial error, such cannot be said of the case at bar. Here, the trial docket sheet, and the circuit clerk’s testimony were offered as part of the State’s case in chief to show the prior conviction. As noted by the authorities above, such was erroneous. See Title 7, Section 393, Code of Alabama 1940.”
We pretermit consideration of other assignments of error as they are not likely to occur again on retrial of this cause. For the error shown, the judgment of conviction is due to be reversed, and the cause is hereby remanded.
Reversed and remanded.
All the Judges concur.